# IN THE UNITED STATES DISTRICT COURT FOR THE NORTHERN DISTRICT OF FLORIDA TALLAHASSEE DIVISION

WILLIAM EARL SCOTT,

      Plaintiff,

v.                              CASE NO. 4:08cv205-RH/WCS

SHERIFF LARRY CAMPBELL, etc.,
et al.,

      Defendants.

_____/

## ORDER GRANTING SUMMARY JUDGMENT ONLY IN PART

The plaintiff was a pretrial detainee in a county jail. He says the responsible officials refused to treat the chronic pain he suffered from a longstanding and severe back condition. As is undisputed, the officials refused to provide the medications that the detainee's private physician had prescribed before he entered the facility. The defendants have moved for summary judgment. This order concludes that whether the plaintiff's constitutional rights were violated turns on disputed issues of fact that cannot properly be resolved by summary judgment. But the order grants summary judgment for one defendant based on qualified immunity, dismisses duplicative official-capacity claims, and grants summary

judgment on the plaintiff's claim under the Americans with Disabilities Act and the Rehabilitation Act.

This order addresses the facts and law only briefly.  Trial is imminent.  A more comprehensive order would serve no purpose.

## I.  The Facts

The plaintiff William Scott was a pretrial detainee at the Leon County jail for five months.  The defendant Sheriff Larry Campbell was responsible for operating the jail.  The jail administrator was the defendant Carl Bennett, an employee of Sheriff Campbell.  The Sheriff had entered a contract with the defendant Prison Health Services, Inc. ("PHS"), under which PHS provided medical care to inmates and detainees.  The defendant Dr. David Brown was a physician employed by PHS.  The defendant Leticia Wright was a nurse employed by PHS.

Before Mr. Scott was arrested and detained at the jail, his private physician had diagnosed a serious back injury and had prescribed narcotic medications for pain.  When Mr. Scott entered the jail, however, PHS immediately began a "detoxification" program under which he was off most of the prescribed medications immediately and off all of them within five days.  This happened at the direction of PHS's regional medical director, Dr. Scott Kennedy, before any physician examined Mr. Scott.  Dr. Brown later examined Mr. Scott but did not

allow him to have the prescribed medications or, according to Mr. Scott, any others

that were effective.  Mr. Scott says he was in chronic pain throughout his time in

the Leon County jail.  For summary-judgment purposes, the assertion must be

accepted as true.

## II.  The Proceedings

Mr. Scott brought this action against the Sheriff in his official capacity, Mr.

Bennett in his official and individual capacities, PHS, Dr. Brown in his official and

individual capacities, and Ms. Wright in her official and individual capacities.  All

have moved for summary judgment.

## III.  The Constitutional Standard: Deliberate Indifference

Deliberate indifference to a pretrial detainee's serious medical needs violates

the Fourteenth Amendment's Due Process Clause.  *See Estelle v. Gamble*, 429 U.S.

97, 104, 97 S. Ct. 285, 50 L. Ed. 2d 251 (1976) (holding that deliberate

indifference to a convicted inmate's serious medical needs violates the Eighth

Amendment); *McDowell v. Brown*, 392 F.3d 1283, 1290 n.8 (11th Cir. 2004)

(applying the same standards to a detainee based on the Due Process Clause and

citing *City of Revere v. Mass. Gen. Hosp.*, 463 U.S. 239, 244-45, 103 S. Ct. 2979,

77 L. Ed. 2d 605 (1983)).  And for this purpose a person's serious medical needs

can include effective treatment of pain.  *See McElligott v. Foley*, 182 F.3d 1248,

1257-58 (11th Cir. 1999) (reversing summary judgment for defendants who gave

an inmate Tylenol instead of more effective pain medications); *Johnson v. Hardin County*, 908 F.2d 1280, 1284-85 (6th Cir. 1990). In an earlier case addressing this issue, the Third Circuit said:

> Although the plaintiff has been provided with aspirin, this may not constitute adequate medical care. If 'deliberate indifference caused an easier and less efficacious' treatment to be provided, the defendants have violated the plaintiff's Eighth Amendment rights.

*West v. Keve*, 571 F.2d 158, 162 (3d Cir. 1978).

## IV.  Applying the Deliberate Indifference Standard

The defendants say taking Mr. Scott off the narcotic pain medications his outside physician prescribed was appropriate and indeed helped him. They say he did well and even played basketball. He denies it, as does his outside physician. Mr. Scott says he was in chronic, severe pain that went untreated and was wholly ignored. Resolving factual disputes of this kind is the stuff of which jury trials are made.

## V.  The Official-Capacity Claim Against the Sheriff

The standards governing constitutional claims against a city are set out in *Monell v. New York City Dep't of Soc. Servs.*, 436 U.S. 658, 694, 98 S. Ct. 2018, 56 L. Ed. 2d 611 (1978). There the Court said that a city can be held liable under 42 U.S.C. § 1983 for an employee's constitutional violation only if (1) the violation was based on a city policy or custom or (2) the employee is one whose edicts or acts may fairly be said to represent official policy. In *Cook ex rel. Estate*

*of Tessier v. Sheriff of Monroe County*, 402 F.3d 1092, 1115-16 (11th Cir. 2005), the Eleventh Circuit applied the *Monell* standard to a claim against a Florida sheriff in his official capacity.

Mr. Scott asserts that the failure to treat his pain was based on a policy forbidding the use of narcotic pain medications at the jail. The record would support a finding that there was a policy disfavoring—if not forbidding—the use of narcotic pain medications, and that the policy was applied despite Mr. Scott's serious medical needs. The record would support a finding that the policy was the moving force behind the failure to adequately treat—that is, behind the deliberate indifference to—Mr. Scott's chronic pain. If so, the Sheriff can be held liable. *See Bd. of County Comm'rs v. Brown*, 520 U.S. 397, 400, 117 S. Ct. 1382, 137 L. Ed. 2d 626 (1997) (holding that liability may be imposed based on a policy that is the "moving force" behind a constitutional violation).

To be sure, the Sheriff says he delegated to PHS all relevant decisions about medical care for jail inmates and detainees. The Sheriff says any policy on narcotic use was developed and implemented only by PHS, not the Sheriff. But the Eleventh Circuit has squarely rejected the assertion that a sheriff can escape liability on this basis. *See Ancata v. Prison Health Services, Inc.*, 769 F.2d 700, 705 (11th Cir. 1985). The Sheriff's duty to provide proper medical care to Mr. Scott was nondelegable. *Id.*

## VI.  The Claim Against PHS

PHS is not entitled to summary judgment for two reasons, each of which would be sufficient standing alone.  First, if PHS had a policy disfavoring narcotic medications even when medically indicated, and if the policy was the moving force behind the failure to adequately treat Mr. Scott's chronic pain, then PHS, like the Sheriff, may be held liable.  Second, even if a private contractor is liable under § 1983 for an employee's conduct only if the employee's edicts or acts may fairly be said to represent official policy, *see Buckner v. Toro*, 116 F.3d 450, 452-53 (11th Cir. 1997); *Gary v. Modena*, No. 05-16973, 2006 WL 3741364, at *9 (11th Cir. Dec. 21, 2006) (applying *Monell* to a claim against PHS), the record would support a finding that at least one of those involved in Mr. Scott's care—PHS's regional medical director—was such an employee.

## VII.  The Redundant Official-Capacity Claims

Filing a complaint against an officer in his or her official capacity is "another way of pleading an action against an entity of which an officer is an agent." *Kentucky v. Graham*, 473 U.S. 159, 165, 105 S. Ct. 3099, 87 L. Ed. 2d 114 (1985).  A complaint thus need only name the entity or a single official-capacity defendant; naming more than one defendant from the same entity serves no purpose.  When more than one defendant is sued for the same entity, all but one may properly be dismissed as redundant.  *See Busby v. City of Orlando*, 931 F.2d

764, 776 (11th Cir. 1991).

The proper official-capacity defendant for claims against a Florida sheriff is the sheriff in his official capacity. Mr. Bennett, as the jail administrator, works for Sheriff Campbell. The official-capacity claim against Mr. Bennett adds nothing to the official-capacity claim against the Sheriff and will be dismissed.

Similarly, Dr. Brown and Ms. Wright work for PHS. The official-capacity claims against them add nothing to the claim against PHS and will be dismissed.

## VIII. *The Claim Against Mr. Bennett Individually*

Mr. Bennett was the jail administrator. He knew of Mr. Scott's complaints of severe pain. He knew Mr. Scott said he was being inadequately treated. But Mr. Bennett was not a physician or a medical professional. He relied on PHS to evaluate individual detainees. A jail administrator who reasonably relies on medical professionals ordinarily is not individually liable for their deliberate indifference to a detainee's medical needs. *See Williams v. Limestone County*, 198 F. App'x 893, 897-98 (11th Cir. 2006) (indicating that "supervisory [prison] officials are entitled to rely on medical judgments made by medical professionals responsible for prisoner care."); *Durmer v. O'Carroll*, 991 F.2d 64, 69 (3d Cir. 1993); *Abdush-Shahid v. Coughlin*, 933 F. Supp. 168, 183 (N.D.N.Y. 1996); *Liscio v. Warren*, 718 F. Supp. 1074, 1082 (D. Conn. 1989), *rev'd on other grounds by* 901 F.2d 274 (2d Cir. 1990) (holding that a prison administrator justifiably may

defer medical decisions to medical experts); *Rodriguez v. Vazquez*, No. CV206-265, 2008 WL 3983116, at *4 (S.D. Ga. Aug. 28, 2008) (granting summary judgment for a jail supervisor who reasonably relied on medical staff to treat inmates).

This does not mean that a jail administrator may escape individual liability for adopting or implementing a policy that is deliberately indifferent to serious medical needs. It is a close question whether this record would support a finding that Mr. Bennett adopted the policy disfavoring narcotics or knew it was being applied inappropriately to Mr. Scott.

But under these circumstances, Mr. Bennett is entitled to qualified immunity. Qualified immunity applies to government officials and employees sued in their individual capacities and protects "all but the plainly incompetent or those who knowingly violate the law." *Malley v. Briggs*, 475 U.S. 335, 341, 106 S. Ct. 1092, 1096, 89 L. Ed. 2d 271 (1986); *see generally Hope v. Pelzer*, 536 U.S. 730, 122 S. Ct. 2508, 153 L. Ed. 2d 666 (2002); *Harlow v. Fitzgerald*, 457 U.S. 800, 102 S. Ct. 2727, 73 L. Ed. 2d 396 (1982). Thus a government official or employee may be held individually liable only if his or her conduct violates clearly established law. Mr. Bennett's reliance on PHS in the circumstances of this case did not violate clearly established law. This conclusion draws support from the fact that, as noted above, courts have repeatedly dismissed claims against jail

administrators under similar circumstances.

## IX.  The Claims Against Dr. Brown and Ms. Wright Individually

Dr. Brown and Ms. Wright were employees of PHS, a private contractor.

They acted under color of law, *see Ancata*, 769 F.2d at 703, but they were not

public officials or employees eligible to assert qualified immunity.  *See Hinson v.*

*Edmond*, 192 F.3d 1342, 1346-47 (11th Cir. 1999) (citing *Richardson v. McKnight*,

521 U.S. 399, 117 S. Ct. 2100, 138 L. Ed. 2d 540 (1997)); *Harrison v. Ash*, 539

F.3d 510, 521-25 (6th Cir. 2008).

Though contested, the record would support a finding that they were

deliberately indifferent to Mr. Scott's serious medical needs.

## X.  Americans with Disabilities Act Claim

Mr. Scott asserts a claim under Title II of the Americans with Disabilities

Act.  At argument, Mr. Scott agreed that despite other, comparatively minor

grievances, the ADA claim rises or falls on the alleged failure to provide adequate

medical care.  But the failure to provide adequate medical care is not by itself an

ADA violation.  *See Schiavo ex rel. Schindler v. Schiavo*, 403 F.3d 1289, 1294

(11th Cir. 2005) (noting that inadequate medical treatment is not, without more, an

ADA violation) (citing *Bryant v. Madigan*, 84 F.3d 246, 248 (7th Cir. 1996));

*Fitzgerald v. Corr. Corp. of Am.*, 403 F.3d 1134, 1144 (10th Cir. 2005).

The ADA claim against PHS is flawed for another reason as well.  Title II of

the ADA does not apply to a private entity. *See Edison v. Douberley*, No.
2:05cv307, 2008 WL 4194813, at *5-6 (M.D. Fla. Sept. 9, 2008) (collecting
authorities and holding that a private contractor who provides medical services to
inmates at a county jail may not be sued under Title II of the ADA); *see also Green
v. City of New York*, 465 F.3d 65, 78-79 (2d Cir. 2006); *Cox v. Jackson*, 579 F.
Supp. 2d 831, 852 (E.D. Mich. 2008).

## XI.  Rehabilitation Act Claim

Finally, Mr. Scott has acknowledged that summary judgment should be
entered on his claim under the Rehabilitation Act because he has failed to show
that federal funds were used at the jail—the sole basis on which he asserted the Act
applied.

## XII.  Conclusion

For these reasons,

IT IS ORDERED:

1.  The summary judgment motions of the defendants Campbell (document
75), PHS (document 78), Brown (document 77), and Wright (document 76) are
GRANTED IN PART and DENIED IN PART.  The ADA and Rehabilitation Act
claims are dismissed with prejudice.  The official-capacity claims against the
defendants Brown and Wright are dismissed without prejudice.  The other claims
remain pending.

2.  The defendant Bennett's summary-judgment motion (document 74) is GRANTED.  The individual-capacity claims against him are dismissed with prejudice.  The official-capacity claims against him are dismissed without prejudice.

3.  I do not direct the entry of judgment under Federal Rule of Civil Procedure 54(b).

SO ORDERED on September 17, 2009.

s/Robert L. Hinkle
United States District Judge